# Eligibility of Citizens of Freely Associated States for HUD Financial Assistance

The Secretary of Housing and Urban Development may not make financial assistance, including assistance under section 8 of the United States Housing Act of 1937, available for the benefit of citizens of the Freely Associated States (Federated States of Micronesia, Marshall Islands, Republic of Palau) who have entered the Territory of Guam and the Commonwealth of the Northern Mariana Islands as non-immigrants pursuant to section 141 of the Compact of Free Association.

March 7, 1996

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

I am replying to your letter of October 3, 1995, in which you inquire whether section 214 of the Housing and Community Development Act of 1980 (codified as amended at 42 U.S.C. § 1436a) ("section 214") precludes the Secretary of Housing and Urban Development from making financial assistance under section 8 of the United States Housing Act of 1937 available for the benefit of citizens of the Freely Associated States (Federated States of Micronesia, Marshall Islands, Republic of Palau) who are present in the Territory of Guam and the Commonwealth of the Northern Mariana Islands pursuant to section 141 of the Compact of Free Association. We conclude that it does.

## I.

Section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f, provides for low-income housing assistance.[1] The basic statutory plan is that the Department of Housing and Urban Development ("HUD") enters into agreements with property owners establishing a "contract rent." Low-income tenants pay one-third of their monthly income toward that contract rent, and HUD pays the balance.

Section 214 of the Housing and Community Development Act of 1980, as amended by section 329(a) of the Omnibus Budget Reconciliation Act of 1981, provides in substance that the Secretary may not make financial assistance, including financial assistance under the United States Housing Act of 1937, available for the benefit of any alien, unless that alien is a resident of the United States and comes within several specified categories, comprising in particular aliens lawfully admitted for permanent residence and certain aliens whose presence in the United States is authorized by specific provisions of the Immigration and Nationality Act. 42 U.S.C. § 1436a(a), (b). Section 214(a)(1) specifically prohibits mak-

---

[1] Section 8 was enacted as a part of title II of the Housing and Community Development Act of 1974, Pub. L. No. 93–383, 88 Stat. 633, 653, which revised the Housing Act of 1937. According to section 201 of the 1974 Act, title II may be cited as "United States Housing Act of 1937."

ing financial assistance available to "alien visitors, tourists, diplomats and students who enter the United States temporarily with no intention of abandoning their residence in a foreign country." [2] 42 U.S.C. § 1436a(a)(1).

Section 141 of the Compact of Free Association, Pub. L. No. 99–239, 99 Stat. 1770, 1804 (1986) (Marshall Islands and Federated States of Micronesia) and Pub. L. No. 99–658, 100 Stat. 3672, 3682 (1986) (Palau), [3] provides in effect that citizens of the Freely Associated States may enter, lawfully engage in occupations and establish residence as nonimmigrants in the United States and its territories without having to comply with certain passport, visa, and labor certification requirements. Such persons are deemed to have the permission of the Attorney General to accept employment in the United States. On the other hand, the right of such persons to establish habitual residence in a territory or possession may be subjected to limitations. Section 141 does not confer on the citizens of the Freely Associated States the right to establish a residence for the purpose of naturalization.

## II.

Section 214 precludes the Secretary from making financial assistance, including benefits under the Housing Act, available for the benefit of any alien unless the alien is a resident of the United States and falls within one of the following six specified categories:

> (1) an alien lawfully admitted for permanent residence as an immigrant as defined by section 1101(a)(15) and (20) of title 8 excluding, among others, alien visitors, tourists, diplomats, and students who enter the United States temporarily with no intention of abandoning their residence in a foreign country;
> (2) an alien who entered the United States prior to June 30, 1948, or such subsequent date as is enacted by law, has continuously maintained his or her residence in the United States since then, and is not ineligible for citizenship, but who is deemed to be lawfully admitted for permanent residence as a result of an exercise of discretion by the Attorney General pursuant to section 1259 of title 8;
> (3) an alien who is lawfully present in the United States pursuant to an admission under section 1157 of title 8 or pursuant to the

---

[2] In the original 1980 version of section 214(a) the prohibition was limited to foreign students. *See* 42 U.S.C. § 1436a(a) (Supp. IV 1980).

[3] We shall refer collectively to the Compacts of Free Association as "the Compact." They became effective as follows: Marshall Islands, October 21, 1986, Federated States of Micronesia, November 3, 1986, Proclamation No. 5564, 3 C.F.R. 146 (1987), *reprinted in* 48 U.S.C. § 1801 note (1994); Republic of Palau, October 1, 1994, Proclamation No. 6726, 3 C.F.R. 104 (1995).

> granting of asylum (which has not been terminated) under section 1158 of title 8;
>
> (4) an alien who is lawfully present in the United States as a result of an exercise of discretion by the Attorney General for emergent reasons or reasons deemed strictly in the public interest pursuant to section 1182(d)(5) of title 8;
>
> (5) an alien who is lawfully present in the United States as a result of the Attorney General's withholding deportation pursuant to section 1253(h) of title 8; or
>
> (6) an alien lawfully admitted for temporary or permanent residence under section 1255a of title 8.

42 U.S.C. § 1436a(a).

As a textual matter, none of the exceptions to section 214's prohibition on financial assistance covers citizens of the Freely Associated States who are present in the United States pursuant to section 141 of the Compact. The exceptions enumerated in subsections (2) through (6) all involve action by the Attorney General with respect to individuals and groups; thus, these subsections do not apply to citizens of the Freely Associated States who are present in the United States pursuant to section 141 of the Compact. Read literally, the exception enumerated in subsection (1) is also inapplicable. It covers "alien[s] lawfully admitted for permanent residence as . . . immigrant[s]," while section 141 of the Compact guarantees citizens of the Freely Associated States the right to "establish residence as . . . nonimmigrant[s]."

Congress's intent in enacting statutes is of course not always served by wooden interpretations of statutory texts, and we realize that arguments can be made that section 214 should not be read to exclude persons present in the United States under section 141 of the Compact. The scope of subsections (1) through (6) arguably suggests that Congress's intent in carving out exceptions to section 214's prohibition was to permit the Secretary as a general matter to provide financial assistance to aliens who are lawful residents of the United States. Citizens of the Freely Associated States are entitled under section 141 of the Compact to "establish residence" for an indefinite period or permanently, and when they do so they clearly have been "lawfully admitted" in many senses of that expression. [4] Furthermore, we note that the legislative history of section 214, and of the bills from which it is derived, include many statements to the effect that the legislation was designed to deny assistance for the benefit of *illegal aliens*. [5] Individuals re-

---

[4] Under section 141(b) of the Compact, the right of citizens of the Freely Associated States "to establish habitual residence in a territory or possession of the United States" may be limited by federal or (where authorized by Congress) territorial legislation. We are not aware that any such limitations have been enacted.

[5] *See* S. Rep. No. 97–87, at 34 (1981); S. Rep. No. 97–139, at 235 (1981), *reprinted in* 1981 U.S.C.C.A.N. 396, 531; H.R. Rep. No. 97–158, at 137 (1981) and the statements on the floor of the Senate of Senators Armstrong and Garn and at 127 Cong. Rec. 7912 and 13,608 (1981). *See also Housing and Community Development Amendments of 1981: Hearings on S. 1022 and S. 1074 Before the Subcomm. on Housing and Urban Affairs of the Senate*

siding in the United States under section 141 of the Compact are not present "illegally" as that term is used in ordinary English.

Although these arguments are not without force, we conclude that in the end they do not overcome the specificity of the statutory text. While the principle *expressio unius est exclusio alterius* is by no means an invariably accurate guide to statutory construction, in this case we believe that it supports what is in any case the most natural reading of the statute's language. Section 214 places a blanket prohibition on HUD financial assistance to aliens and then enumerates specific exceptions to that prohibition. Nothing in the language of any of the exceptions suggests that one of them is intended to be a catchall covering other, related categories of persons, while the detail with which Congress described the exceptions to the general prohibition points to the conclusion that Congress intended to define with precision the exceptions it was creating to the general rule.

The argument that the text and legislative history show that Congress could not have meant to deny HUD benefits to aliens whose presence in this country is not "illegal," furthermore, ignores the fact that Congress expressly stated that an open-ended list of legally-present aliens are covered by the section 214 prohibition. *See* 42 U.S.C. § 1436a(a)(1) (noting that the provision covers *"among others*, alien visitors, tourists, diplomats, and students who enter the United States temporarily with no intention of abandoning their residence in a foreign country") (emphasis added). [6]

The Government of the Federated States of Micronesia, one of the Freely Associated States, argues that applying section 214's prohibition to citizens of the Freely Associated States would violate section 172(a) of the Compact which provides:

> (a) Every citizen of [Palau,] the Marshall Islands or the Federated States of Micronesia who is not a resident of the United States shall enjoy the rights and remedies under the laws of the United States enjoyed by any non-resident alien.

Section 172(a), however, does not appear to apply in the present context. Section 172(a) concerns the rights of citizens of the Freely Associated States who do not reside in the United States and requires that their rights under United States law be equal to those enjoyed by any other non-resident alien. Aliens not residing in the United States cannot receive HUD financial benefits, *see* 42 U.S.C. § 1436a(a) (HUD assistance prohibited unless the "alien is a resident"), and thus the application of section 214 to bar assistance to Freely Associated States citizens does not treat them less favorably than other non-resident aliens.

---

*Comm. on Banking, Housing, and Urban Affairs*, 97th Cong. 443 (1981) (Statement of Sen. Armstrong); *id.* at 508 (Statement of Henry Eschwege, a witness from the General Accounting Office).

    [6] The quoted language undercuts any claim that the references to "illegal aliens" in the legislative history demonstrate that the statutory prohibition is limited to persons whose presence in the United States is contrary to United States law.

The conclusion that in the several states section 214 bars HUD financial assistance to citizens of the Freely Associated States who have entered the United States pursuant to section 141 of the Compact seems harsh, and is perhaps anomalous in light of Congress's exclusion from the section 214 ban of most other categories of aliens who may lawfully remain within the United States indefinitely. However, we do not think that this conclusion leads to the sort of " 'absurd or futile results . . . plainly at variance with the policy of the legislation as a whole,' " *Pauley v. Bethenergy Mines, Inc.* 501 U.S. 680, 704 (1991) (citation omitted), that would justify a departure from the apparent meaning of the statutory text. The "policy of [section 214] as a whole" is to deny certain benefits to aliens as a general rule, while specifying exceptions to that rule. Citizens of the Freely Associated States whose residence in the United States rests on section 141 of the Compact are not within any of the specified exceptions and thus are subject to the general rule.

## II.

Our general conclusion in part I does not in itself resolve the question of section 214's application to citizens of the Freely Associated States present in Guam and the Commonwealth of the Northern Mariana Islands.

*Guam.* Section 3(b)(7) of the United States Housing Act of 1937 defines the term "State" as follows:

> The term "State" includes the several States, the District of Columbia, the Commonwealth of Puerto Rico, the territories and possessions of the United States, the Trust Territory of the Pacific Islands, and Indian tribes.

42 U.S.C. § 1437a(b)(7). This definition indicates that Congress intended that the United States Housing Act, including section 8, apply to the area set forth in that definition. Since Guam is a territory of the United States, *see* section 3 of the Organic Act of Guam, 48 U.S.C. § 1421a, section 8 of the United States Housing Act applies to Guam.

Section 214, on the other hand, does not contain a definition of its geographic scope, and does not provide specifically that its prohibition on financial assistance extends to aliens living in a territory. Nevertheless, it is our conclusion that the geographic reach of section 214 is coextensive with that of the Housing Act. This conclusion is based on three considerations. First, the text of section 214 does not draw any distinction between aliens located in the states and those located in the territories. Second, we have not discovered any other indication of a congressional intent to draw such a distinction. Third, section 214 incorporates by

reference the Housing Act of 1937. *See* 42 U.S.C. § 1436a(b)(1). Consequently, in the absence of any showing to the contrary, the geographic coverage of section 214 is the same as that of the statute which it incorporates. The prohibition of section 214 thus applies to assistance benefiting aliens residing in Guam.

*The Commonwealth of the Northern Mariana Islands.* The Commonwealth of the Northern Mariana Islands ("CNMI") is a territory of the United States, but determining whether a federal law applies to the CNMI requires a different analysis from that which is applied to Guam.

In 1974, when section 8 of the Housing Act was enacted, the Northern Mariana Islands were a District of the Trust Territory of the Pacific Islands. Section 8 thus was applicable to the Northern Mariana Islands pursuant to section 3(b)(7) of the Housing Act of 1974. [7]

In 1976, the United States and the Northern Mariana Islands concluded a Covenant to establish the Commonwealth of the Northern Mariana Islands under the sovereignty of the United States. Pub. L. No. 94–241, 90 Stat. 263 (1976) (codified as amended at 48 U.S.C. § 1801 note (1994)). The Covenant became effective in relevant part in 1978. Section 502(a) of the Covenant was designed "to provide a workable body of law when the new government of the Northern Mariana Islands becomes operative." S. Rep. No. 94–433, at 76 (1975). [8] Section 502(a) provides in relevant part that the laws that provide federal services and financial assistance programs, as they apply to Guam, that are in existence on the effective date of section 502, [9] and subsequent amendments to such laws, apply to the CNMI, to the same extent that they apply to Guam. Section 8 of the United States Housing Act thus is applicable to the CNMI under section 502(a)(1) because it provides financial assistance and was applicable to Guam on January 9, 1978. [10] Although section 214 was enacted after section 502(a) became effective, it is applicable to the CNMI because it is a subsequent amendment to the Housing Act. [11]

---

[7] The authority of Congress to enact legislation applicable to the Trust Territory was based on article 3 of the Trusteeship Agreement of July 18, 1947, pursuant to which the United States could

> apply to the trust territory, subject to any modifications which the administering authority may consider desirable, such of the laws of the United States as it may deem appropriate to local conditions and requirements.

Trusteeship Agreement for the Former Japanese Mandated Islands, July 18, 1947, art. 3, 61 Stat. 3301, 3302, 8 U.N.T.S. 189, 192.

[8] It should be noted, however, that section 502 deals only with the original introduction of federal law to CNMI. Subsequent congressional legislation applicable to the CNMI is governed by section 105.

[9] Section 502(a) became effective on January 9, 1978. Proclamation No. 4534, 3 C.F.R. 56 (1978), *reprinted in* 48 U.S.C. § 1801 note (1994).

[10] This conclusion does not change even if we assume that section 8 of the Housing Act is not a law providing financial assistance within the meaning of section 502(a)(1). Section 502(a)(2) renders applicable other federal laws "which are applicable to Guam and which are of general application to the several States as they are applicable to the several States." Section 8 would then be applicable to the CNMI as a law applicable to Guam which is of general application to the States.

[11] Under section 503(a) of the Covenant, the immigration and naturalization laws of the United States are not at present applicable to the CNMI. However section 503(a) does not render inapplicable to the CNMI all federal legislation that somehow affects aliens, but only those statutes that relate to the immigration of aliens and related

Continued

## III.

Construing section 214 to apply to citizens of the Freely Associated States present in the United States is arguably in tension with the express exception of most other categories of lawful alien residents from section 214's scope. However, we do not think that this tension is sufficient to overcome the plain meaning of the statutory text, and we do not believe that the legislative history of which we are aware permits a departure from the text. If the text of section 214 does not reflect Congress's wishes, the remedy is legislative. We therefore conclude that the Secretary may not make financial assistance, including assistance under section 8 of the United States Housing Act of 1937, available for the benefit of citizens of the Freely Associated States who have entered Guam or the Commonwealth of the Northern Mariana Islands as non-immigrants pursuant to section 141 of the Compact of Free Association.

H. JEFFERSON POWELL
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

issues such as the exclusion and deportation of aliens. To the extent that section 503(a) is relevant, it supports our conclusion that section 214, which does not address issues such as immigration and exclusion, applies to the CNMI.